**Reversed and Rendered and Opinion Filed January 26, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00435-CV

**MY VACATION EUROPE, INC., Appellant**
**V.**
**CONNIE SIGEL, Appellee**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-13-06937-E**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Fillmore
Opinion by Justice Francis

My Vacation Europe, Inc. d/b/a Paris Perfect appeals the trial court's order denying its special appearance. In two issues, MVE claims the trial court erred by denying its special appearance because Connie Sigel did not plead general jurisdiction and, even if she had, neither specific nor general jurisdiction exists. We reverse the trial court's judgment and render judgment dismissing the claims against MVE for want of personal jurisdiction.

In the summer of 2012, Sigel planned a trip to Paris, France. While searching on-line for accommodations, she found the Paris Perfect website (www.parisperfect.com) which advertised and marketed various vacation rentals. Sigel completed an online reservation inquiry form and submitted the requested contact information, including her name, phone number, email address, and the date she intended to travel to Paris. The following day, a MVE representative emailed

Sigel and provided details about the "Margaux apartment" which was available during the time Sigel intended to travel to Paris. After reading the email, Sigel asked for a draft rental agreement. On July 17, 2012, a MVE representative emailed Sigel a personal booking code and a personal reservation page, along with instructions for booking the Margaux apartment online. Sigel accessed the reservation page and entered into a rental contract for the apartment, submitting payment in full for a seven-night stay beginning September 6, 2012.

Sigel travelled to Paris in September 2012 and began her stay in the Margaux apartment. On the afternoon of September 10, while Sigel was away from the apartment, someone used a key to enter the apartment. That same person also had a separate key to access the safe in the apartment and stole "the majority of [Sigel's] possessions." In the days that followed, Sigel contacted various employees of MVE who represented they were agents and employees of Paris Perfect. Sigel forwarded MVE a copy of the French police report that noted a key had been used to access the apartment and a separate key used to open the safe. When Sigel contacted MVE to submit her claim for reimbursement, MVE informed her that it was not responsible for her losses and that a French corporation, Westates SCI d/b/a Paris Perfect, owned the Margaux apartment.

Sigel sued MVE and Westates for breach of contract, negligence, negligent misrepresentation, fraud, conspiracy, conversion, theft of property, and gross negligence. She claimed both defendants were liable under theories of joint enterprise, piercing the corporate veil, and alter ego. MVE and Westates each filed a special appearance and a motion to dismiss based on a forum selection clause contained in the online rental contract. The trial court denied MVE's special appearance but granted a continuance for discovery as to Westates's special appearance. The trial court also denied the motions to dismiss. MVE now appeals the denial of its special appearance.

Whether a court has personal jurisdiction over a defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805−06 (Tex. 2002). When resolving this question of law, a trial court must frequently resolve questions of fact. *Id*. at 806. On appeal, the trial court's decision to grant or deny a special appearance is subject to de novo review, but appellate courts may be called upon to review the trial court's resolution of a factual dispute. *Id*. When the trial court does not issue findings of fact, reviewing courts should presume that the trial court resolved all factual disputes in favor of its judgment. *Id*. Here, the relevant facts are generally not disputed.

A Texas court may exercise jurisdiction over a nonresident only if the Texas long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction is consistent with federal and due process guarantees. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). The Texas long-arm statute permits Texas courts to exercise jurisdiction over a nonresident "doing business" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2008). The definition of "doing business" in Texas includes contracting "by mail or otherwise with a Texas resident" when either party is to perform the contract in whole or in part in this state or committing a tort in whole or in part in Texas. *Id*. § 17.042(2). The long-arm statute's broad doing-business language allows the statute to "reach as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

Federal due process requirements limit a state's power to assert personal jurisdiction over a nonresident defendant. *See id*. Personal jurisdiction is proper when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts

are sufficient for personal jurisdiction when the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). There are three parts to a "purposeful availment" inquiry. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Id.* Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. *Id*. And finally, the "defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction." *Michiana*, 168 S.W.3d at 785. The purpose of the minimum contacts analysis is to protect a defendant from being haled into court when its relationship with Texas is too attenuated to support jurisdiction. *Am. Type Culture*, 83 S.W.3d at 806.

A nonresident defendant's forum-state contacts may give rise to two types of personal jurisdiction: general and specific. *Moki Mac*, 221 S.W.3d at 575. A general jurisdiction inquiry is very different from a specific jurisdiction inquiry and involves a "more demanding minimum contacts analysis" than for specific jurisdiction. *PHC–Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007). For general jurisdiction to exist, "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction." *Id*. If the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established whether or not the defendant's alleged liability arises from those contacts. *BMC Software*, 83 S.W.3d.at 796.

In contrast, when specific jurisdiction is alleged, we focus the minimum-contacts analysis on the relationship among the defendant, the forum, and the litigation. *Guardian Royal*, 815 S.W.2d at 228 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). If we conclude a nonresident defendant has made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities here, then we address whether the defendant's alleged liability arises out of or is related to those contacts. *Moki Mac*, 221 S.W.3d at 576. For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Id*. at 585. The mere sale of a product to or a single contract with a Texas resident will not generally suffice to confer specific jurisdiction upon our courts. *Michiana*, 168 S.W.3d at 786.

The plaintiff bears the initial burden of pleading sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Moki Mac*, 221 S.W.3d at 574. The nonresident defendant then assumes the burden of negating all bases of jurisdiction alleged. *Id*. Because the question of a court's exercise of personal jurisdiction over a nonresident defendant is one of law, we review a trial court's determination of a special appearance de novo. *Id*.

In its first issue, MVE claims no facts in the record support the finding that Sigel's tort and breach of contract claims arise from or relate to MVE's contacts with Texas so as to establish specific jurisdiction. In response, Sigel argues MVE has purposefully availed itself of the privilege of conducting business in Texas because it "received revenue from a rental in the state of Texas." She also contends MVE established sufficient contacts with Texas by making material representations to her via its website and by entering into a rental contract with her in "Plaintiff's home in Dallas County, Texas." She claims the damages she suffered arose from or

related to the fact that the representations MVE made to her in Texas were false and MVE breached its contract.

In determining whether MVE has purposefully availed itself of the privilege of conducting business here, we ignore Sigel's connections or activity. We consider only MVE's contacts with Texas. These must be purposeful, not random, fortuitous, or attenuated, and MVE must have sought some benefit, advantage, or profit "by availing itself of the jurisdiction." Thus, the fact Sigel accessed the MVE website and rented a Paris apartment while sitting at the computer in her home in Dallas is not sufficient; rather the record must show MVE intended to serve the Texas market. *See Moki Mac*, 221 S.W.3d at 577. Here, the record indicates MVE does not target Texas residents, does not advertise in Texas, and has not directed marketing of its services or the apartment rentals to Texas residents or Texas travel agents. And, over a five-year period, total rentals by MVE to people with Texas mailing addresses were less than 5% of the total rentals, both in number and revenue. The contract was not performed in Texas, and there was no delivery of goods or services to Texas.

These facts are in stark contrast to those in *Moki Mac River Expeditions v. Drugg*. In that case, a Utah-based outdoor expedition company actively solicited Texas business by mailing solicitations to past and prospective Texas customers, placed ads in local media, engaged in "mass and targeted direct-marketing email campaigns" to Texas residents, utilized continuing relationships with Texas customers to recruit additional business, and hired public relations firms to target media groups and tour operators in Texas. *Moki Mac*, 221 S.W.3d at 577–79. The facts of the case before us are more in line with those of the *Michiana Easy Livin' Country, Inc. v. Holten* case in which Michiana—a "seller [who] did not purposefully direct marketing efforts here to solicit sales" sold an RV to Holten in Texas "by the mere fortuity that Holten happened to reside here." *Id*. at 576. The supreme court concluded the bare fact that a nonresident defendant

makes a sale to a Texas buyer does not constitute purposeful availment to the privilege of conducting activities in Texas so as to invoke the benefits and protections of its laws. *Michiana*, 168 S.W.3d at 786–87; *see Moki Mac*, 221 S.W.3d at 577 ("[T]he mere sale of a product to a Texas resident will not generally suffice to confer specific jurisdiction upon our courts. Instead, the facts alleged must indicate that the seller intended to serve the Texas market."). Under the facts of this case, we cannot conclude MVE has purposefully availed itself of the privilege of conducting business in Texas.

Furthermore, even if MVE had purposefully availed itself of the benefits of conducting business in Texas, we would nevertheless conclude no specific jurisdiction exists because the causes of action arise from the break in and theft of property in Paris, France, and do not arise from or are not related to an activity conducted within Texas. *See Marchand*, 83 S.W.3d 796. Again, we find the supreme court's reasoning in *Moki Mac* to be instructive. The parents of thirteen-year-old Andy Druggs sued Moki Mac when Andy fell to his death while hiking on a Grand Canyon hiking trail. *Moki Mac*, 221 S.W.3d at 573. The Druggs alleged they were induced to send Andy on the rafting trip by Moki Mac's direct solicitations, which included statements made in the company's brochures as well as the release sent to the parents. The Druggs claimed Moki Mac assured them the trip was suitable for children ages twelve or above, regardless of their camping skills, and that the company had "taken reasonable steps to provide you with appropriate equipment and/or skilled guides." The Druggs claimed that, but for these promises, they would not have sent Andy on the rafting trip and he would not have fallen on the hiking trail. *Id.* at 585. While accepting as true the Druggs' claim that they would not have sent their son on the trip were it not for Moki Mac's representations about safety, the supreme court noted:

> the operative facts of the Druggs' suit concern principally the guides' conduct of
> the hiking expedition and whether they exercised reasonable care in supervising

–7–

Andy. The events on the trail and the guides' supervision of the hike will be the focus of the trial, will consume most if not all of the litigation's attention, and the overwhelming majority of the evidence will be directed to that question. Only after thoroughly considering the manner in which the hike was conducted will the jury be able to assess the Druggs' misrepresentation claim. In sum, "the [alleged misrepresentation] is not the subject matter of the case ... nor is it related to the operative facts of the negligence action." Whatever connection there may be between Moki Mac's promotional materials sent to Texas and the operative facts that led to Andy's death, we do not believe it is sufficiently direct to meet due-process concerns. Analogous cases from other courts support our view.

*Id.* at 588 (internal citations omitted). Thus, although Moki Mac had sufficient purposeful contact with Texas to satisfy the first prong of jurisdictional due process, the supreme court nevertheless concluded the injuries for which the parents sought recovery (their child's death on a hiking trail in Arizona) and "the relationship between the operative facts of the litigation and Moki Mac's promotional activities in Texas are simply too attenuated to satisfy specific jurisdiction's due-process concerns." *Id*. Likewise, we conclude the damages that Sigel seeks to recover from the theft of her property and the relationship between the facts of the case and MVE's actions are too attenuated to establish specific jurisdiction. We sustain MVE's first issue.

In its second issue, MVE contends the trial court erred by denying its special appearance because Sigel did not plead general jurisdiction and, even if she had, MVE does not have continuous and systematic contacts with Texas.

In her second amended petition, Sigel claimed the trial court had jurisdiction over MVE because it regularly conducted business in Texas via its "highly interactive website www.parisperfect.com and engage[d] in repeated online contacts with Texas residents over the Internet." Sigel also argued MVE "markets, advertises, solicits, and conducts business within the state of Texas." We conclude this pleading sufficiently raises the issue of general jurisdiction.

–8–

Most of Sigel's argument concerning general jurisdiction revolves around MVE's purported "highly interactive website." It is constitutionally permissible to exercise personal jurisdiction over one who conducts activity over the internet in a commercial nature and quality. *Jackson v. Hoffman*, 312 S.W.3d 146, 154 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Internet use falls within three categories on a sliding scale for purposes of establishing personal jurisdiction. *Reiff v. Roy*, 115 S.W.3d 700, 705 (Tex. App.—Dallas 2003, pet. denied); *Choice Auto Brokers, Inc. v. Dawson*, 274 S.W.3d 172, 177–78 (Tex. App.—Houston [1st Dist.] 2008, no pet.). At one end of the sliding scale are websites that are "clearly used for transacting business over the Internet," such as entering into contracts, sales of goods and products, and the knowing and repeated transmission of files of information. *Reiff*, 115 S.W.3d at 705; *Dawson*, 274 S.W.3d at 177. These websites may be sufficient to establish minimum contacts with a state. *Reiff*, 115 S.W.3d at 705. On the other end of the scale are "passive" or "informational" websites that are used only for purposes such as advertising, and "are not sufficient to establish minimum contacts even though they are accessible to residents of a particular state." *Id*. at 705−06. Between the extremes of the scale are "interactive" websites that allow for some "exchange of information between a potential customer and a host computer." *Id*. Courts evaluate the middle ground contacts based on the level of interactivity (the degree of interaction between the parties) and the commercial nature of the exchange of information. *Karstetter v. Voss*, 184 S.W.3d 396, 405 (Tex. App.—Dallas 2006, no pet.); *Jackson*, 312 S.W.3d at 154.

The record shows MVE owns and maintains a website which is a "primary portal through which MVE does business." The website displays photographs and descriptions of properties available to rent; however, in order to get information on availability and pricing of a specific property, a potential renter must send an online inquiry form. Once MVE receives the request, a representative responds by email and, when appropriate, gives information about the specific

–9–

property. The potential renter is then directed to an online reservation page where she may complete the reservation form and submit payment. While the website is accessible to anyone with Internet access, it does not target Texas residents nor does it allow for direct communication with MVE representatives. Likewise, it does not allow for immediate booking of properties. At best, the MVE website falls between passive and interactive on the sliding scale and, without more, is insufficient to assert general jurisdiction.

Even if MVE's website were "very interactive," this would be but one factor to consider in determining whether general jurisdiction exists. A defendant's business activities in the forum state must be numerous to support a finding that it had the type of continuous and systematic contacts to allow the exercise of general jurisdiction in a constitutional manner. Here, the record shows MVE has no business operations or relationships in Texas; it has no offices, no employees, no bank accounts, no rental properties, and no registered agent in Texas. Although it markets apartments via its website, MVE does not ship products to Texas, does not perform any services in Texas, and does not target Texas residents. These facts show MVE is not engaged in any longstanding business in Texas. Viewing the record in the light most favorable to Sigel, we conclude she has not shown the "continuous and systematic contacts" necessary to make a prima facie case for the exercise of general jurisdiction.

We reverse the trial court's order denying MVE's special appearance and render judgment dismissing all claims against MVE.


140435F.P05                                        /Molly Francis/
                                                   MOLLY FRANCIS
                                                   JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MY VACATION EUROPE, INC.,
Appellant

No. 05-14-00435-CV      V.

CONNIE SIGEL, Appellee

On Appeal from the County Court at Law
No. 5, Dallas County, Texas
Trial Court Cause No. CC-13-06937-E.
Opinion delivered by Justice Francis,
Justices Lang-Miers and Fillmore
participating.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's order denying the special appearance and **RENDER** judgment dismissing the claims against My Vacation Europe, Inc. for want of personal jurisdiction.

We **ORDER** that appellant MY VACATION EUROPE, INC. recover its costs of this appeal from appellee CONNIE SIGEL.

Judgment entered January 26, 2015.