**RIVERSIDE EXPORTS, INC., Appellant,**

v.

**B.R. CRANE & EQUIPMENT, LLC, Appellee.**

No. 14–10–00573–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 24, 2011.

James Michael Hughes, League City, for appellant.

Frederick Lee Fuhr, League City, for appellee.

Panel consists of Justices SEYMORE, BOYCE, and CHRISTOPHER.

## OPINION

TRACY CHRISTOPHER, Justice.

In this breach-of-contract case, the nonresident defendant challenges the denial of its special appearance. Because the defendant lacked minimum contacts with the state, we reverse and render judgment dismissing the case.

## I. BACKGROUND

Riverside Exports, Inc. is a New Jersey corporation that buys and sells heavy industrial machinery and equipment. It operates from a single office in New Jersey and has no affiliated or subsidiary entities.

Texas limited liability company B.R. Crane, LLC contacted Riverside to purchase a crane advertised on Riverside's website. It paid a deposit of $43,000 and agreed to pay the remaining $24,500 of the purchase price not later than December 15, 2009. Riverside did not complete the sale, and B.R. Crane sued for breach of contract, fraud, and violations of the Texas Deceptive Trade Practices–Consumer Protection Act. As the basis for personal jurisdiction, B.R. Crane pleaded that Riverside (a) conducted business in the State of Texas, (b) advertised the crane for sale over the internet, (c) sent emails to B.R. Crane in Harris County "for the purpose of consummating a transaction with respect to the purchase" of the crane, (d) refunded B.R. Crane's deposit by electronically transferring the funds back to B.R. Crane's bank account in Harris County, and (e) made misrepresentations in Texas by sending B.R. Crane emails misstating the reasons it refused to complete the sale.

Riverside filed a special appearance supported by evidence that it has no office, bank account, or property in Texas; no employees who are based in or visit Texas; and no Texas customers other than B.R. Crane, who has made approximately four purchases from Riverside. Riverside further established that it makes no arrangements for disassembling or transporting equipment, and its customers take possession of their purchases wherever the equipment happens to be located. It has never bought or sold equipment located in Texas. Finally, Riverside does not direct advertising to Texas, although it has a website where potential customers can view photographs, descriptions, and prices of equipment available for sale. Riverside's physical and email addresses and its facsimile and telephone numbers are displayed on the website, but the website is only informational, and does not afford direct communication between Riverside and any visitors to the website.

In response to the special appearance, B.R. Crane offered an affidavit consisting almost entirely of a verbatim recitation of the factual section of its original petition. After a non-evidentiary hearing, the trial court denied the special appearance and Riverside brought this interlocutory appeal.

## II. GOVERNING LAW

■■ A Texas court's exercise of personal jurisdiction over a nonresident satisfies state statutory and federal due-process requirements if the nonresident has minimum contacts with Texas and the exercise of personal jurisdiction over the nonresident does not offend traditional notions of fair play and substantial justice. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). The minimum-contacts requirement is satisfied when the nonresident purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 575 (Tex.2007).

■■ The "purposeful availment" inquiry has three parts. *Id.* First, only the defendant's contacts with the forum are relevant, so the reviewing court does not consider the unilateral activity of other persons or entities. *Id.* Second, the contacts on which jurisdiction depends must be purposeful, rather than random, fortuitous, or attenuated. *Id.* Third, "the 'de-

fendant must seek some benefit, advantage or profit by "availing" itself of the jurisdiction.'" *Id.* (quoting *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 785 (Tex.2005)).

■■■ A nonresident's contacts with the forum state may give rise to general or specific jurisdiction. *Id.* General jurisdiction is established if the nonresident's contacts with the forum state were continuous and systematic within a reasonable number of years before suit was filed. *PHC–Minden, L.P. v. Kimberly–Clark Corp.,* 235 S.W.3d 163, 168–71 (Tex.2007). Specific jurisdiction is established if the non-resident's alleged liability arises out of or is related to an activity conducted within the forum. *Moki Mac,* 221 S.W.3d at 575–76. Liability arises out of or is related to an activity within the state when there is a substantial connection between the nonresident's contacts with the state and the operative facts of the litigation. *Id.* at 576, 585.

■■ The existence of personal jurisdiction is a question of law which we review de novo. *Spir Star AG v. Kimich,* 310 S.W.3d 868, 871 (Tex.2010). In our review, we consider all of the jurisdictional evidence before the trial court, and if it issued no findings of fact, we presume the trial court resolved all factual disputes in favor of its ruling if such a finding is supported by the record. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002).

### III. ANALYSIS

In three issues, Riverside challenges the trial court's ruling on the grounds that (a) B.R. Crane failed to plead sufficient facts to subject Riverside to personal jurisdiction in Texas, (b) Riverside established that it lacks minimum contacts with Texas, and (c) the trial court's exercise of personal jurisdiction does not comport with tradi-

tional notions of fair play and substantial justice. Because this case presents such a striking analogy to *Michiana Easy Livin' Country, Inc. v. Holten,* one of the leading Texas cases on minimum-contacts analysis, we dispose of this case based on Riverside's second issue without addressing the remaining grounds. *See* TEX.R.APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *Peredo v. M. Holland Co.,* 310 S.W.3d 468, 476 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (when the minimum-contacts requirement has not been met, it is unnecessary to address the second prong of the due-process test). After considering the pleadings and the evidence, we conclude that the jurisdictional allegations do not individually or collectively support the exercise of personal jurisdiction.

**A. In refunding B.R. Crane's deposit, Riverside did not purposefully avail itself of the privilege of conducting activities in Texas.**

■ Both at trial and on appeal, B.R. Crane has maintained that the most compelling factor supporting the exercise of personal jurisdiction is Riverside's refund of B.R. Crane's deposit by wire-transfer to a Texas bank. But here, as in *Michiana,* the defendant's contact with Texas was dictated by the plaintiff's unilateral choice.

In *Michiana,* Texas resident Holten decided to buy a recreational vehicle from Michiana, an outlet store in Indiana. *Michiana,* 168 S.W.3d at 781. He telephoned the store in Indiana to place his order and he paid for it in Indiana. *Id.* Michiana then arranged for the vehicle to be shipped to Holten in Texas. *Id.* at 788. Holten was unhappy with the vehicle, and sued Michiana for DTPA violations, fraud,

breach of contract, and breach of warranty based on misrepresentations Michiana allegedly made during Holten's telephone call.

The court held that these facts were insufficient to establish that Michiana had purposefully availed itself of the privilege of conducting activities within this state. *Id.* at 787. As the court explained, "Under Holten's theory, Michiana could be sued in any state or country from which he chose to place his call and take delivery. But as the Supreme Court stated, 'unilateral activity . . . cannot satisfy the requirement of contact with the forum State.'" *Id.* at 787 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

As in *Michiana,* the plaintiff in this case reached outside Texas to initiate a purchase from a nonresident seller, then sued in a Texas court for DTPA violations, fraud, and breach of contract. Here, the defendant kept the product and sent the plaintiff's money back to Texas, whereas in *Michiana,* the defendant kept the plaintiff's money and sent the product to Texas. But this is a distinction without a difference. In both instances, the Texas destination was the result of the plaintiff's unilateral choice. Riverside's contacts with Texas, like Michiana's, resulted from the mere fortuity that the customer happened to reside here.

Citing two cases from our sister courts, B.R. Crane argued in the trial court and in its responsive brief that wiring money to a Texas bank is sufficient as a matter of law to confer jurisdiction. *See Bissbort v. Wright Printing & Publ'g Co.,* 801 S.W.2d 588 (Tex.App.-Fort Worth 1990, no writ) and *Mercer v. Angel Racing,* No. 09–02–067–CV, 2002 WL 1478526 (Tex.App.-Beaumont July 11, 2002, pet. dism'd w.o.j.) (not designated for publication). We disagree. As we previously have stated,

"sending funds to Texas is not determinative." *Alenia Spazio, S.p.A. v. Reid,* 130 S.W.3d 201, 213 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *see also Shell Compania Argentina de Petroleo, S.A. v. Reef Exploration, Inc.,* 84 S.W.3d 830, 839 (Tex.App.-Houston [1st Dist.] 2002, pet. denied) (same); *Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.,* 994 S.W.2d 684, 691 (Tex.App.-San Antonio 1998, no pet.) (same), *abrogated on other grounds by BMC Software,* 83 S.W.3d at 794 & n. 1. And given that B.R. Crane chose its Texas domicile and chose to use a Texas bank, it is hard to conceive how Riverside could refund the company's money without some contact with Texas.

The cases cited by B.R. Crane do not affect our analysis. The *Mercer* case is inconsistent with the precedent of this court while lacking any precedential value of its own, and in *Bissbort,* factors other than a single wire-transfer supported jurisdiction. There, it was a nonresident company that contacted a Texas resident about repairing a printing press in another state, and the parts needing repair were shipped to Texas. These contacts would be sufficient to support specific jurisdiction under our own precedent. *See Nogle & Black Aviation, Inc. v. Faveretto,* 290 S.W.3d 277, 283 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (explaining that a nonresident who reaches out to a Texas resident for services to be performed in part in Texas may have sufficient contacts to support the exercise of specific jurisdiction). But no such contacts are present here.

In effect, Riverside did no more than reverse B.R. Crane's transfer of funds. We conclude that Riverside did not purposefully avail itself of the privilege of conducting activities in this state by doing so.

## B. The exercise of personal jurisdiction is not supported by Riverside's maintenance of an informational website.

 B.R. Crane additionally stated in its pleadings that Riverside had advertised the crane on the internet. When determining whether specific jurisdiction may be based on a nonresident's website, we generally evaluate the site on a sliding scale. *Jackson v. Hoffman*, 312 S.W.3d 146, 155–56 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)). Absent evidence that a business intends to serve the Texas market, a website that is merely informational, presenting only "passive advertising," generally will not support the exercise of personal jurisdiction. *Id.*

Riverside produced uncontroverted evidence that it uses its website merely to post contact information, together with lists, photographs, descriptions, and prices of available equipment. Potential customers cannot make purchases or even communicate directly with Riverside through the website. By such undifferentiated advertising, which is accessible nationally and even internationally, a business cannot be said to avail itself of the privilege of conducting activity in a particular state. *See Weber v. Jolly Hotels*, 977 F.Supp. 327, 333–34 (D.N.J.1997) (comparing internet advertising to advertising in a national magazine and noting that internet advertising "is not tantamount to directing activity at or to purposefully availing oneself of a particular forum"). And here, there is no evidence from the website or otherwise that Riverside intended to serve the Texas market. *Cf. Spir Star*, 310 S.W.3d at 877–78 (defendant's website listed Texas as the site for one of its offices, indicating an intent or purpose to serve the Texas market).

Because Riverside's website is solely informational, we conclude that it does not support the exercise of specific jurisdiction. *See Jackson*, 312 S.W.3d at 155.

## C. Riverside did not purposefully avail itself of the privilege of conducting activities in Texas by communicating by email with B.R. Crane.

 B.R. Crane also alleged that Riverside sent emails to it in Texas "for the purpose of consummating a transaction with respect to the purchase," and later, to misrepresent the reason it refused to complete the sale. The email exchange in this case appears analogous to the telephone conversation in *Michiana*. And as the court explained in that case,

> [C]hanges in technology have made reliance on phone calls obsolete as proof of purposeful availment. While the ubiquity of "caller ID" may allow nonresidents to know a caller's telephone number, that number no longer necessarily indicates anything about the caller's location. If jurisdiction can be based on phone conversations "directed at" a forum, how does a defendant avail itself of any jurisdiction when it can never know where the other party has forwarded calls or traveled with a mobile phone?

*Michiana*, 168 S.W.3d at 791.

 These words apply equally to email communications. Like telephone calls, emails do not necessarily indicate anything to the recipient about the sender's location. The physical address where one may send or retrieve an email is no more fixed to a particular location than the address where one may send or receive a telephone call. We see no reasoned basis for distinguishing between the two means of communication, particularly when many of the same devices can be used for both. Where, as here, a Texas resident initiates the purchase of equipment outside Texas

by contacting a company outside Texas that does not direct marketing to Texas, it matters little whether the nonresident company answers the inquiry by telephone or by email. In neither event has the nonresident purposefully availed itself of the privilege of conducting activities in the state. *See Jackson,* 312 S.W.3d at 155–56 (holding that nonresident business did not purposefully avail itself of the privilege of conducting activity in this state where its mail and email communications were made in response to Texas resident's inquiry). This remains true regardless of whether the defendant's communications allegedly contained misrepresentations. *See Michiana,* 168 S.W.3d at 790–91.

**D. Riverside does not have a history of continuous, systematic contact with Texas.**

Finally, the record does not support the exercise of general jurisdiction, nor has B.R. Crane seriously contended otherwise. As previously discussed, Riverside does not market its equipment in Texas, has no property or employees in Texas, has not bought or sold equipment located in Texas, and has no Texas customers other than B.R. Crane. Thus, the record does not support an implied finding that Riverside has had continuous, systematic contact with Texas for a reasonable number of years before this suit was filed.

## IV. CONCLUSION

Because we conclude that Riverside lacks minimum contacts to sustain a Texas court's exercise of personal jurisdiction over it, we sustain Riverside's second issue. Without addressing Riverside's remaining appellate issues, we reverse and render judgment dismissing the case against it for want of jurisdiction.