**Reversed and Rendered and Memorandum Opinion filed June 6, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00763-CV

### STAR MOTORS, LLC D/B/A MERCEDES-BENZ OF FORT LAUDERDALE, Appellant

### V.

### MOTORWERKS VEHICLE SALES LLC D/B/A MW CARLINE, Appellee

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-31936**

## M E M O R A N D U M   O P I N I O N

Appellant, Star Motors, LLC d/b/a Mercedes-Benz of Fort Lauderdale ("Star Motors"), a nonresident of Texas, appeals the denial of its special appearance. Star Motors contends that it lacks the requisite purposeful contacts with the State of Texas. We agree, and we reverse the trial court's order denying Star Motors' special appearance and render judgment dismissing the case for want of jurisdiction.

## Background

Motorwerks Vehicle Sales LLC d/b/a MW Carline ("MW Carline"), a Texas LLC, purchased a 2016 Bentley automobile from Star Motors, a Florida LLC. According to MW Carline's live pleading, Star Motors represented to MW Carline that the Bentley was "in perfect, like-new condition with a warranty." After MW Carline purchased the vehicle, it sold the Bentley to a buyer in California. But the California buyer quickly discovered that the vehicle had been flooded and unwound the transaction. When Star Motors refused to unwind the transaction with MW Carline, MW Carline sold the Bentley at auction for a loss of approximately $20,000. MW Carline sued Star Motors for breach of contract, negligent misrepresentation, fraud, violations of the Texas Deceptive Trade Practices Act, and breach of warranty.

Star Motors filed a special appearance supported by an unsworn declaration.[1] Star Motors' general manager, Giff Hummel, declared that Star Motors: (1) is a limited liability company organized and existing under Florida law with its principal place of business in Broward County, Florida; (2) is not registered to do business in Texas; (3) does not maintain a location to conduct business in Texas; and (4) does not maintain a registered agent in Texas. Hummel further declared that the contract for the purchase of the Bentley was created and executed in Florida, Star Motors did not affirmatively initiate the sale of the vehicle "in any jurisdiction outside Florida," the transaction "was performed and completed" in Florida, and the vehicle was transferred to MW Carline's possession or responsibility from New Jersey, which is where the vehicle was located when the sale occurred.

---

[1] *See* Tex. Civ. Prac. & Rem. Code § 132.001.

In response to Star Motors' special appearance, MW Carline filed an unsworn declaration from its president, Omar George Harris, in support of its jurisdictional allegations. In the declaration, MW Carline asserted the following jurisdiction facts:

> 2. On behalf of MW Carline, I personally handled the transaction at issue in this lawsuit involving MW Carline's purchase and Star Motors, LLC d/b/a/ Mercedes Benz of Fort Lauderdale's ("Star Motors") sale of the 2016 Bentley Continental GT bearing VIN SCBGU3ZA1GC051003 (the "Vehicle").

> 3. MW Carline (in Houston, Texas) and Star Motors (in Fort Lauderdale, Florida) have had a business relationship for about four years. The business these two companies do with each other is the buying and selling of motor vehicles. In some of these numerous transactions, MW Carline is the buyer, and Star Motors is the seller. In some of these numerous transactions, MW Carline is the seller, and Star Motors is the buyer. Over the past four years or so, the total value of these transactions would be in the millions of dollars.

> 4. MW Carline did not do anything to initiate the transaction involving the purchase of the Vehicle in question. Rather, this transaction was affirmatively initiated exclusively by Star Motors' representative reaching out to me, in Houston, Texas by phone to solicit MW Carline's interest in purchasing the Vehicle involved in this lawsuit and one other vehicle. I did not call Star Motors in Fort Lauderdale to inquire about buying the Vehicle. Star Motors called me in Houston to try to sell MW Carline the Vehicle (and did so). The misrepresentations and omissions that MW Carline complains of in this case were made over the phone by Star Motors' representative who had called me in Houston. Star Motors transmitted the purchase agreement for the Vehicle to me in Houston, and I signed the purchase agreement on behalf of MW Carline in Houston. The Vehicle was delivered to MW Carline in Houston. Star Motors' representative called me in Houston for the purpose of selling me the Vehicle and delivering it to Houston. I signed the contract in Houston.

Based on this evidence, MW Carline asserted that Star Motors failed to negate all grounds for personal jurisdiction alleged in its live pleading (amended petition), and thus the trial court should deny the special appearance.

Star Motors replied to MW Carline's response, urging, *inter alia*, a tort allegedly committed in a single phone call with a Texas resident and signing a purchase contract with a Texas resident are insufficient contacts with Texas to confer specific jurisdiction. Star Motors also argued that subjecting it to jurisdiction in Texas would offend traditional notions of fair play and substantial justice.

The trial court denied the special appearance after a hearing, finding in a written order that it had specific jurisdiction over Star Motors. This interlocutory appeal timely followed. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7).

**Personal Jurisdiction Framework**

The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in the state. Tex. Civ. Prac. & Rem. Code § 17.042. The Supreme Court of Texas has interpreted the broad language of the Texas long-arm statute to extend a Texas court's personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017). A trial court may constitutionally exercise personal jurisdiction over a party when (1) the nonresident defendant has minimum contacts with the forum state and (2) the assertion of jurisdiction complies with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Peters v. Top Gun Exec. Grp.*, 396 S.W.3d 57, 62 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *M & F Worldwide*, 512 S.W.3d at 886. "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant reasonably could anticipate being called

4

into a Texas court." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A nonresident defendant's contacts with a forum state can give rise to either general or specific jurisdiction. *M & F Worldwide*, 512 S.W.3d at 885. The trial court found specific jurisdiction and MW Carline does not attempt to invoke general jurisdiction.[2] In analyzing specific jurisdiction, we focus on the relationship among the defendant, the forum, and the particular litigation at hand. *See id.* at 886; *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575-76 (Tex. 2007). Specific jurisdiction is established when the plaintiff's claim arises from or relates to the defendant's alleged minimum contacts within the forum. *M & F Worldwide*, 512 S.W.3d at 886. For specific jurisdiction purposes, a defendant's minimum contacts with a forum are established when the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (citing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). Three principles govern the purposeful-availment analysis: (1) "only the defendant's contacts with the forum" are relevant, not the unilateral activity of another party or third person; (2) the defendant's acts must be "purposeful" and not "random, isolated, or fortuitous"; and (3) the defendant "must

---

[2] General jurisdiction is established when a defendant's contacts "are so continuous and systematic as to render [it] at essentially at home in the forum State." *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation and citation omitted). MW Carline has not alleged that Star Motors' contacts with Texas establish general jurisdiction, nor does our record indicate that Star Motors is essentially at home in Texas such that general jurisdiction would be appropriate. *See, e.g.*, *PHC-Minden, L.P. v. Kimberly Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007).

seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction" such that it impliedly consents to suit there. *Id.*

We review de novo a trial court's decision regarding a special appearance. *See id.* at 885. In a challenge to personal jurisdiction, the plaintiff and the defendant bear shifting burdens of proof. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Id.* Once it has done so, the burden shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* A defendant may meet the burden to negate jurisdiction by showing, as is relevant here, that "the defendant's contacts with Texas fall short of purposeful availment." *Id.* at 659.

## Application

In the trial court and on appeal, MW Carline asserts that Star Motors purposefully availed itself of the privilege of doing business in Texas because (1) it had an ongoing business relationship with MW Carline for about four years, (2) it initiated the transaction that forms the basis of this lawsuit by calling and soliciting MW Carline to purchase the Bentley and made misrepresentations or omitted information during this phone call, and (3) it "transmitted" the purchase agreement to Texas, where MW Carline signed it, and MW Carline "took delivery" of the vehicle in Texas. For purposes of our analysis, we presume the truth of MW Carline's jurisdictional facts as set forth in its declaration.[3] Star Motors contends that its contacts with Texas are not sufficient to support jurisdiction.

---

[3] *See Kelly*, 301 S.W.3d at 659 (explaining that defendant may negate jurisdiction by showing that, even assuming the truth of the plaintiff's jurisdictional facts, the defendant's contacts fall short of purposeful availment).

We first consider whether MW Carline's evidence of its business relationship with Star Motors preceding the transaction at issue is sufficient. The relationship, as MW Carline describes it, has little bearing on our specific-jurisdiction analysis because the present litigation does not arise from it. "Specific jurisdiction . . . does not turn on where a plaintiff happens to be, and does not exist where the defendant's contacts with the forum state are not substantially connected to the alleged operative facts of the case." *Searcy v. Parex Resources, Inc.*, 496 S.W.3d 58, 70 (Tex. 2016); *see also Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 563 (Tex. 2018) (to satisfy requirements of specific jurisdiction, claim must arise from defendant's contacts); *M & F Worldwide*, 512 S.W.3d at 889-90; *Bryan v. Gordon*, 384 S.W.3d 908, 916 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("The fact that appellees conducted business with Bryan, as a Texas resident, is insufficient alone to confer specific jurisdiction."). In short, the only contacts relevant to our specific-jurisdiction inquiry in today's case are those relating to the Bentley transaction.

Next, citing the phone call during which Star Motors solicited the sale of the vehicle and purportedly made misrepresentations or omitted information, MW Carline argues essentially that Star Motors directed a tort at Texas during the call. Yet, the Supreme Court of Texas has specifically rejected telephone calls, without more, as a basis for establishing specific jurisdiction. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005) ("[C]hanges in technology have made reliance on phone calls obsolete as proof of purposeful availment."); *see also Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 417-18 (Tex. App.—Dallas 2008, no pet.) (email and phone communications regarding negotiation and performance of contract insufficient contacts). Moreover, both the United States and Texas supreme courts have rejected the "directed-a-tort" theory of specific jurisdiction. *See Old Republic*, 549 S.W.3d at 560-61; *Searcy*, 496 S.W.3d

7

at 68-70 ("The *Michiana* court thus expressly rejected the 'directed-a-tort' theory from the jurisprudence surrounding specific jurisdiction."); *see also Walden v. Fiore*, 571 U.S. 277, 285-291 (2014). Specific jurisdiction does not turn on "whether a defendant's contacts were tortious" but rather on the contacts themselves. *Michiana*, 168 S.W.3d at 792. Intermediate appellate courts also have rejected as insufficient to prove purposeful availment allegations of tortious conduct occurring during telephone calls or in emails to a resident of the forum state. *See KC Smash 01, LLC v. Gerdes, Hendrichson, Ltd., L.L.P.*, 384 S.W.3d 389, 392-93 (Tex. App.—Dallas 2012, no pet.) (foreign defendant's contacts insufficient to demonstrate purposeful availment when defendant initiated contact with Texas plaintiff and allegedly made misrepresentation by telephone and email to plaintiff); *Buffet Partners, L.P. v. Sheffield Square, L.L.C.*, 256 S.W.3d 920, 924 (Tex. App.—Dallas 2008, no pet.) (rejecting specific jurisdiction because "[t]he sole connection to Texas was that it was the state in which [plaintiff] received the communications"); *Marsh v. Marsh*, 241 S.W.3d 570, 573, 576-77 (Tex. App.—El Paso 2007, no pet.) (Texas court lacked specific jurisdiction over foreign defendant who allegedly made single tortious telephone call to Texas plaintiff's wife for purpose of interfering with plaintiff's agreement).

*KC Smash* is an apt comparison. There, a Kansas restaurant franchisee failed to pay a Texas architectural firm for architectural services the firm provided for the franchisee's restaurants in Kansas; the Texas firm sued the Kansas franchisee in Texas state court for, among other things, breach of contract and fraud. *KC Smash*, 384 S.W.3d at 390-91. The Texas architectural firm alleged that the Kansas franchisee intentionally sought out and hired the Texas firm, that the Texas firm's architectural work was largely performed in Texas, that the franchisee "made payments and incurred debts payable to [the architectural firm] at its Texas office,"

8

and that the franchisee made fraudulent and misleading representations to the architectural firm in Texas. *Id.* at 392-93. In concluding that the Kansas franchisee lacked the requisite contacts to support jurisdiction, the Dallas Court of Appeals noted that the franchisee's contacts with the Texas firm "were through telephone and email communications and the sending of payments" to Texas. *Id.* at 393. The court of appeals concluded that the nonresident "defendant's knowledge of the relationship to Texas will not make the defendant amenable to jurisdiction," when the defendant's acts failed to establish minimum contacts and purposeful availment. *See id.* at 394. Likewise, the court continued, "fraudulent or negligent misrepresentations made through electronic media do not establish minimum contacts." *Id*. at 393.

Here, as the above authority illustrates, simple knowledge that the effects of a nonresident's actions will be felt by a resident plaintiff is insufficient to confer personal jurisdiction over the nonresident. One or two phone calls to Texas regarding the proposed transaction, even presuming Star Motors made the misrepresentations or omissions alleged, are simply insufficient to confer specific jurisdiction over Star Motors.

Last, MW Carline's evidence shows that Star Motors transmitted the purchase agreement to Texas, where MW Carline's representative signed it, and that the vehicle was delivered to MW Carline in Houston. But entering into a contract with a Texas resident does not satisfy the minimum contacts requirement. *See id.* at 393-94; *Paredo v. M. Holland Co.*, 310 S.W.3d 468, 474-75 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (nonresident does not establish minimum contacts with Texas simply by contracting with a Texas resident and engaging in numerous communications, by telephone or otherwise, with persons in Texas concerning the contract); *Olympia Capital Assocs.*, 247 S.W.3d at 417 ("[M]erely contracting with

9

a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction."); *see also Burger King Corp.v. Rudzewicz*, 471 U.S. 462, 478-79 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Moreover, "numerous telephone and facsimile communications with people in Texas relating to an alleged contract" similarly does not suffice. *Alenia Spazio, S.p.A. v. Reid*, 130 S.W.3d 201, 213-14 (Tex. App.—Houston [14th Dist.] 2003, pet denied); *see also Olympia Capital Assocs.*, 247 S.W.3d at 417-18. Finally, that MW Carline received the vehicle in Texas does not support specific jurisdiction. Instead, the vehicle's delivery to Texas resulted from MW Carline's unilateral choice, rather than a purposeful contact by Star Motors. *See Munz v. Schreiber*, No. 14-17-00687-CV, 2019 WL 1768590, at *7-8 (Tex. App.—Houston [14th Dist.] Apr. 23, 2019, no pet. h.) (mem. op.) (citing *Michiana*, 168 S.W.3d at 787; *Riverside Exports, Inc. v. B.R. Crane & Equip., LLC*, 362 S.W.3d 649, 654 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)). In other words, as in *Michiana*, *Munz*, and *Riverside Exports*, the delivery of the Bentley to Texas resulted from the "mere fortuity that the customer happened to reside there." *Riverside Exports*, 362 S.W.3d at 649; *see also Michiana*, 168 S.W.3d at 787-88 (rejecting proposition that seller of chattels is subject to suit wherever a customer may request delivery); *Munz*, 2019 WL 1768590, at *7. These contacts likewise do not support specific jurisdiction over Star Motors.

For the foregoing reasons, Star Motors' contacts with Texas do not suffice as a matter of law to confer specific jurisdiction over it regarding MW Carline's claims. Accordingly, the trial court erred by denying Star Motors' special appearance, and we sustain Star Motors' sole appellate issue.

## Conclusion

We reverse the trial court's order denying Star Motors' special appearance and render judgment dismissing MW Carline's claims against Star Motors for lack of personal jurisdiction.


/s/     Kevin Jewell
        Justice

Panel consists of Chief Justice Frost and Justices Jewell and Bourliot.