**Reversed and Rendered and Memorandum Opinion filed June 8, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00499-CV

---

### ALPINE OCEAN SEISMIC SURVEY, INC., Appellant

### V.

### JOSEPH MOORE, Appellee

---

**On Appeal from the County Court No. 2
Galveston County, Texas
Trial Court Cause No. CV-0078770**

---

### MEMORANDUM OPINION

In this interlocutory appeal, Joseph Moore sued appellant Alpine Ocean Seismic Survey, Inc. (Alpine) under the Jones Act for injuries he allegedly received while working on the R/V *Shearwater*, a research vessel that was anchored off the coast of Maryland. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (interlocutory appeal from denial of special appearance). Alpine filed a special appearance, asserting that it was a nonresident of Texas and that Texas courts could not exercise personal jurisdiction over it consistent with

due-process guarantees. The trial court denied Alpine's special appearance. In three related issues, Alpine argues that: (1) it did not waive its special appearance; (2) a related Houston-based corporation is not its alter ego, and therefore that company's contacts with Texas cannot be imputed to Alpine; and (3) the jurisdictional evidence is not legally and factually sufficient to support the trial court's exercise of personal jurisdiction over it. Concluding the trial court erred by denying the special appearance, we reverse the trial court's order and render judgment dismissing Moore's claims against Alpine for want of personal jurisdiction.

## I.    BACKGROUND

Moore sustained a back injury while working as a deckhand aboard the R/V *Shearwater* in October 2016, a research vessel owned and operated by Alpine. Moore was injured while attempting to fill the starboard generator with oil. He argued that the vessel did not have an engineer, and therefore crewmembers such as Moore had to perform tasks traditionally performed by engineers. Moore is and has been a resident of Louisiana at all relevant times, and all of his medical treatment resulting from his injury aboard the *Shearwater* occurred in Maryland or Louisiana. At the time of his injury, the *Shearwater* was docked in Maryland.

In April 2017, Moore sued Alpine and co-defendant Gardline Surveys, Inc. (Gardline Surveys) in Galveston County Court alleging violations of the Jones Act.[1] *See* 46 U.S.C. § 30104. Moore's petition does not distinguish between the actions of either defendant and alleges he was employed by "Defendants as an employee assigned to the vessel, *R/V SHEARWATER*, which was owned, operated and/or managed by the Defendants." In October 2017, Alpine filed a special appearance, after which the parties engaged in jurisdictional discovery. In August

---

[1] Gardline Surveys is not a party to this appeal, though it is a defendant in the trial court.

2018, Alpine filed its first amended special appearance. Though originally set for hearing in November 2018, Alpine passed on the hearing due to a trial conflict of its counsel. The trial judge was not notified and denied the special appearance. In February 2019, Alpine learned that the special appearance had been ruled on and denied and filed a motion for reconsideration. The trial court granted the motion and heard substantive arguments on Alpine's special appearance in June 2019. Ultimately, the trial court denied Alpine's special appearance without stating a reason for its ruling. This interlocutory appeal followed.

## II. ANALYSIS

In three issues, Alpine challenges the trial court's denial of its special appearance. In issue one, it argues that it did not waive its special appearance. In issue two, it argues that Gardline Surveys is not its alter ego, and therefore Gardline Surveys' contacts with Texas cannot be imputed to Alpine. And in issue three, it argues that the evidence is legally and factually insufficient to support the trial court's exercise of personal jurisdiction over it.

### A. Standard of review

Whether a trial court has personal jurisdiction over a defendant is a question of law that we review de novo, but the trial court frequently must resolve questions of fact in order to decide the issue. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as here, a trial court does not state findings of fact and conclusions of law with its ruling on a special appearance, all findings necessary to support the ruling and supported by the evidence are implied, although the sufficiency of the record evidence to support those findings may be challenged on appeal. *BMC Software,* 83 S.W.3d at 795.

Evidence is legally sufficient if it would enable a reasonable and fair-minded person to find the fact under review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A "legal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id*. A legal-sufficiency challenge will be sustained if the record reveals that evidence offered to prove a vital fact is no more than a scintilla. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014). The factfinder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Keller*, 168 S.W.3d at 819.

In a factual-sufficiency challenge, we consider and weigh all of the evidence, both supporting and contradicting the finding. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). A court of appeals can set aside the finding only if it is so contrary to the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Id*. at 407. We may not substitute our own judgment for that of the factfinder or pass upon the credibility of witnesses. *Id*.

A trial court should resolve a party's special appearance based on the pleadings, any stipulations between the parties, affidavits and attachments filed by the parties, relevant discovery, and any oral testimony put forth before the court. *See* Tex. R. Civ. P. 120a(3).

## B.    Alpine Ocean did not waive its special appearance

In issue one, Alpine argues it did not waive its special appearance. During and after the hearing on Alpine's motion for reconsideration, Moore maintained that Alpine waived its special appearance because twenty months passed between the time Alpine initially filed a special appearance and the trial court's ruling ruled on the special appearance.

Moore has not cited any authority for the proposition that a nonresident defendant waives its special appearance by waiting approximately twenty months before setting a hearing on it, nor have we found any support for this assertion. *See Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 846 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding delay of one year in setting hearing did not waive special appearance); *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd.*, No. 02-0400254-CV, 2006 WL 1030185, at *4 (Tex. App.—Fort Worth, Apr. 20, 2006, pet. denied) (mem. op.) (holding delay of eighteen months in setting hearing did not waive special appearance); *cf. Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex. 2005) (observing, in context of deciding whether forum-selection clause was waived, special appearance was decided two years after filing). A specially-appearing defendant must make a timely request for a hearing, bring the special appearance to the trial court's attention, and secure a ruling on the preliminary question of personal jurisdiction. *Kehoe v. Pollack*, 526 S.W.3d 781, 789 (Tex. App.—Houston [14th Dist.] 2017, no pet.). However, the rule requires only that jurisdictional challenges be heard and determined before "any other plea or pleading may be heard." *See* Tex. R. Civ. P. 120a(2). Moore does not contend that Alpine violated either the due-order-of-pleading requirement or the due-order-of-hearing requirement.

Moore attempts to distinguish Alpine's behavior from our precedent, without supporting authority, by arguing Alpine not only delayed a hearing on the special appearance, but failed to appear at a hearing and then delayed seeking reconsideration of the order entered as a result.[2] Because the rule does not impose a temporal deadline by which a party contesting jurisdiction must have a hearing on its special appearance and Alpine did not violate the due-order-of-pleadings

---

[2] Alpine disputes this description, but in any event, the trial court granted Alpine's motion for reconsideration.

requirement, we conclude that delay in setting the hearing did not waive the special appearance. Tex. R. Civ. P. 120a; *see Horizon Shipbuilding*, 324 S.W.3d at 846; *PetroSaudi Oil Services Ltd. v. Hartley*, 617 S.W.3d 116, 136–37 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (defendant that amended its special appearance three times over seven months, passed hearing that was scheduled on special appearance, and did not immediately reset hearing did not waive special appearance).

We sustain Alpine's issue one.

## C. Personal jurisdiction

The broad "doing business" language in the Texas long-arm statute allows the exercise of personal jurisdiction to "reach[ ] as far as the federal constitutional requirements of due process will permit." *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977) (interpreting former Revised Statutes art. 2031b, Act of Mar. 18, 1959, 56th Leg., R.S., ch. 43, § 4, 1959 Tex. Gen. Laws 85, 85–86) (amended 1979) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 17.042). Due process is satisfied when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A nonresident defendant's minimum contacts can create either general or specific jurisdiction. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). Minimum contacts exist when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Michiana*, 168 S.W.3d at 784. There are three components to the "purposeful availment" inquiry. *Id*. at 785. First, the relevant contacts are those of the defendant, not the unilateral activity of another party or a

third person. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). Second, the contacts must be purposeful rather than random, fortuitous, isolated, or attenuated. *Id*. Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

## 1. General jurisdiction

A trial court has general jurisdiction over a nonresident defendant when the defendant's contacts with the forum state are so continuous and systematic that the defendant is essentially at home in the state. *TV Azteca*, 490 S.W.3d at 37. When a nonresident defendant is subject to general jurisdiction, the trial court may exercise jurisdiction over the defendant even if the plaintiff's claim does not arise from or relate to the defendant's contacts with the forum. *Id*. This test requires substantial activities within the forum and is more demanding than the test for specific jurisdiction. *Id*. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *see* Domicile Definition, *Black's Law Dictionary* (11th ed. 2019), *available at* Westlaw ("The place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere.").

In issue two, Alpine argues that Gardline Surveys is not its alter ego, and therefore Gardline Surveys' contacts with Texas cannot be imputed to Alpine. Though Moore states that specific jurisdiction is at issue in the case, not general jurisdiction, one of Moore's two bases for jurisdiction—that Alpine's relationship with Gardline Surveys imputes minimum contacts with Texas to Alpine—can only

7

be read to allege that the trial court has general jurisdiction over Alpine. At the hearing on Alpine's amended special appearance, Moore's counsel argued that Gardline Surveys owned a 75% interest in Alpine, therefore establishing sufficient minimum contacts between Alpine and Texas. Though this argument was raised for the first time at the hearing on Alpine's special appearance, it was presented to the trial court at the hearing and preserved for our review. Tex. R. App. P. 33.1(a). At the hearing on Alpine's special appearance, there was argument and discussion about "Gardline's" ownership of Alpine. The reporter's record reflects confusion between the two Gardline entities. However, the undisputed evidence in the record established that Gardline Marine Sciences, Inc. (Gardline Marine), a Delaware company, owned a 75% interest in Alpine, with Robert Mecarini and his father, both residents of New York, owning the remaining 25% interest.[3] There was also evidence that Gardline Marine also owned an interest in Gardline Surveys, which had its principal office in Houston. However, there is no evidence in the record to support a conclusion that Gardline Surveys—the Texas-based co-defendant— possessed any ownership interest in Alpine. Moore does not cite to any contrary evidence.[4]

---

[3] Gardline Marine, the nonresident parent-holding company, was not a party to the lawsuit and was not alleged to have any Texas contacts.

[4] On appeal, Moore characterizes Alpine and Gardline Surveys as operating as a single business entity. This theory has never been endorsed by the supreme court. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 173–74 (Tex. 2007) (stating court has "never endorsed" single-business enterprise theory of imputed contacts and "jurisdictional veil-piercing and substantive veil-piercing involve different elements of proof"). Texas law presumes two separate corporations are indeed distinct entities. *BMC Software*, 83 S.W.3d at 798. There must be something beyond the subsidiary's "mere presence within the bosom of the corporate family." *PHC-Minden*, 235 S.W.3d at 176. Moore argues Alpine and Gardline Surveys disregarded corporate formalities because a contract between Alpine and an unrelated third-party (having nothing to do with Moore's claims or lawsuit) provided that Alpine could elect to supply personnel from its "Houston Office." Alpine's president, Robert Mecarini, testified that the language in the contract was erroneous because Alpine had no Houston office. However, he stated the contract language referred to Gardline Surveys' office in Houston. This argument was

We sustain Alpine's issue two.

## 2.    Specific jurisdiction

In issue three, Alpine contends the jurisdictional evidence is not legally and factually sufficient to support the trial court's exercise of personal jurisdiction over it. We agree.

A trial court has specific jurisdiction over a nonresident defendant when (1) the defendant's contacts with the forum state are purposeful and (2) the litigation arises from or relates to those contacts. *See Burger King*, 471 U.S. at 472. Minimum contacts exist when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Michiana*, 168 S.W.3d at 784. In conducting a specific-jurisdiction analysis, we focus on the relationship among the defendant, the forum, and the litigation. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984); *Shaffner v. Heitner*, 433 U.S. 186, 204 (1977). The nonresident defendant must take action that is purposefully directed at the forum state. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 577 (Tex. 2007). To determine whether the nonresident defendant purposefully directed action toward Texas, we examine the nonresident defendant's conduct indicating an intent or purpose to serve the Texas market. *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987); *Moki Mac*, 221 S.W.3d at 577. When a nonresident defendant is subject to specific jurisdiction, the trial court may exercise jurisdiction over the defendant even if the defendant's forum contacts are isolated or sporadic. *TV Azteca*, 490 S.W.3d at 37. Specific jurisdiction is

---

not presented to the trial court either in briefing or orally at the hearing on Alpine's special appearance. Therefore, we conclude that it has not been preserved for our review. Tex. R. App. P. 33.1(a).

established when the defendant's alleged liability "aris[es] out of or [is] related to" an activity conducted within the forum. *Helicopteros*, 466 U.S. at 414 n.8.

In his petition, Moore concedes that Alpine is a nonresident with no principal place of business in Texas and does not allege any facts giving rise to jurisdiction in Texas. Our special-appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction. We have consistently held that the plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Kelly v. Gen. Interior Const., Inc*., 301 S.W.3d 653, 658 (Tex. 2010). Though Moore identifies Alpine as the owner of the vessel on which he was injured, Moore does not identify any jurisdictional connection with Texas.[5] However, Moore's petition as well as his response to Alpine's special appearance can be considered in determining whether Moore met his burden. Tex. R. Civ. P. 120a(3); *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Predator Downhole Inc. v. Flotek Indus., Inc*., 504 S.W.3d 394, 402 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("plaintiff may carry that burden in its petition or in response to the defendants' special appearance"). We therefore address Moore's jurisdictional allegations as raised in his response to the special appearance. *See Kelly*, 301 S.W.3d at 658.

Moore argues that Alpine had minimum contacts with the State of Texas that were more than sufficient to satisfy the requirements for personal jurisdiction. He

---

[5] When the pleading is wholly devoid of jurisdictional facts, the plaintiff should amend the pleadings to include the necessary factual allegations. *Kelly*, 301 S.W. 3d at 659; *see also* Tex. R. Civ. P. 63. While Moore did not amend his petition, he did offer jurisdictional factual allegations in his response to the special appearance and amended special appearance. *See Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Predator Downhole Inc. v. Flotek Indus., Inc.*, 504 S.W.3d 394, 402 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

attached to his briefing a variety of invoices and contracts demonstrating contacts Alpine had with Texas. Moore also referenced evidence that Alpine hired Texas-based employees through a recruiting agency. We conclude that although tenuous, Moore has satisfied his burden of pleading sufficient allegations to bring Alpine within the reach of the Texas long-arm statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042.

Next, Alpine had the burden to present sufficient evidence to defeat Moore's allegations and negate all bases of personal jurisdiction. *Kelly*, 301 S.W.3d at 658 (defendant filing special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff). In support of its special appearance, Alpine primarily relied on the affidavit of Robert Mecarini, Alpine's president, as well as his deposition and some discovery. Mecarini's affidavit confirms that Alpine is a nonresident of Texas, with its principal office in Norwood, New Jersey. The vessel on which Moore was working has never operated out of a port in Texas, is not contracted for work in Texas, and is not repaired or maintained in Texas. Mecarini testified that while Alpine has been awarded work from companies with offices in Texas, all the work performed under those contracts for the last ten years has been outside of Texas. The contracts in the record between Alpine and Texas-based companies were not related to the allegations in this lawsuit or Moore's injuries.

Mecarini stated Alpine has no employees in Texas. Though the company interviewed two individuals living in Texas in 2016 and 2017 for positions in New Jersey, none of those interviews resulted in a job offer, and Alpine has not actively recruited in the state of Texas since 1997. Alpine has engaged contractors through two Texas-based personnel services companies. Those contractors lived outside of Texas and were engaged for services to be performed outside of Texas. Mecarini's

11

affidavit confirmed that Alpine sometimes solicited and contracted with Texas-based companies, though none of the work resulting from those contracts was performed in Texas. Mecarini's testimony and affidavit establish that although Alpine has had occasional contact with individuals or businesses in Texas, those contacts are legally insufficient to establish personal jurisdiction. We conclude Alpine met its the burden of presenting sufficient evidence to defeat Moore's allegations and negate all bases of personal jurisdiction. *Kelly*, 301 S.W.3d at 658–59 ("Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts[.]").

Moore attempts to meet his burden of "establishing the requisite link with Texas" by citing to evidence that Alpine utilized Texas-based Haarseth DP & Marine Services, LLC to provide audit and safety services aboard the *Shearwater* one month before the incident. *See id.* at 660. He argues that his allegations against Alpine include a failure to "properly train employees," "supervise their crew," "maintain a safe work environment," and "provide an adequate crew." Alleging that Alpine "hired and transacted business with a Texas citizen immediately prior to the accident" that related directly to his claims and the underlying incident, Moore asserts that he established specific personal jurisdiction over Alpine. However, the evidence of this audit is not sufficient to establish the requisite link with Texas. The audit was not conducted in Texas. Haarseth flew to Maryland to conduct the audit aboard the *Shearwater* at its docking location. The fact that Alpine hired a Texas-based consultant to conduct an inspection in Maryland does not reflect that Alpine purposely availed itself of the privilege of conducting activities in Texas or that it intended to avail itself of the Texas market. Rather, it

12

was merely a fortuity that Haarseth happened to be based in Texas. *See Searcy v. Parex Res., Inc.,* 496 S.W.3d 58, 74–75 (Tex. 2016) (no specific personal jurisdiction when Canadian company purchased non-Texas oil-and-gas assets from company with executives based in Houston); *Riverside Exports, Inc. v. B.R. Crane & Equip., LLC*, 362 S.W.3d 649, 654 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (no personal jurisdiction when contacts "resulted from the mere fortuity that the customer happened to reside" in Texas); *cf. Calder v. Jones*, 465 U.S. 783, 789 (1984) (jurisdiction was present when "intentional, and allegedly tortious conduct . . . [is] expressly aimed" at the forum). Utilizing the services of an individual or company based in Texas to perform an inspection of a vessel in Maryland, without more, does not reflect that Alpine purposely established minimum contacts with Texas. *See Burger King*, 471 U.S. at 478 (individual's contract with out-of-state party alone cannot automatically establish sufficient minimum contacts in other party's home forum); *see also Peredo v. M. Holland Co.*, 310 S.W.3d 468, 474–75 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[A] nonresident does not establish minimum contacts simply by contracting with a Texas entity and engaging in numerous communications, by telephone or otherwise, with people in Texas concerning the contract."); *Blair Commc'ns, Inc. v. SES Survey Equip. Servs., Inc.*, 80 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("Merely contracting with a Texas resident does not satisfy the minimum contacts requirement[;] [n]or is jurisdiction justified by the single fact that a contract is payable in Texas.").

Here, the evidence is legally and factually insufficient to establish that Alpine purposefully established minimum contacts with Texas. *See Burger King*, 471 U.S. at 474 (noting that "the constitutional touchstone remains whether the [nonresident] defendant purposefully established 'minimum contacts' in the forum

State") (citing *International Shoe Co.*, 326 U.S. at 316); *see also Moki Mac*, 221 S.W.3d at 575–76. Because the jurisdictional evidence does not support the trial court's exercise of personal jurisdiction over Alpine, the trial court committed reversible error by denying Alpine's special appearance.

We sustain Alpine's issue three.

## IV. CONCLUSION

Having sustained Alpine's three issues, we reverse the trial court's interlocutory order denying Alpine's special appearance and render the judgment the trial court should have rendered, a dismissal of Moore's claims against Alpine for want of personal jurisdiction. Tex. R. App. P. 43.2(c).

/s/    Charles A. Spain
Justice

Panel consists of Justices Jewell, Spain, and Wilson.

14