**Robert W. JACKSON, Appellant,**

v.

**H. Chris HOFFMAN Individually, d/b/a Shadygrove Restorations, and d/b/a Chris Service, Appellee.**

No. 14–09–00589–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 13, 2010.

Michael Wade Jackson, Houston, for appellant.

Seshasayee Kalapatapu, Houston, for appellee.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and CHRISTOPHER.

## OPINION

JOHN S. ANDERSON, Justice.

This is an appeal from the granting of a special appearance filed by appellee, H. Chris Hoffman individually, d/b/a Shadygrove Restorations, and d/b/a Chris Service. Appellant, Robert W. Jackson, appeals the trial court's order granting appellee's special appearance and dismissing appellant's law suit. Appellant contends (1) the court has personal jurisdiction over appellee; and (2) appellee waived the special appearance. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In the suit underlying this appeal, appellant sued appellee for trespass to chattels, breach of contract, common law fraud, violations of the Texas Deceptive Trade Practices Act, common law breach of warranty of good and workmanlike services, and common law breach of implied warranty of suitability. Appellant's claims arise from a

contract requiring appellee to perform restoration services on appellant's 1969 Chevrolet Camaro. Appellee is a Missouri resident who operated an automobile repair and restoration shop in Missouri. In April 2007, appellant, a Texas resident, contacted appellee to discuss whether appellee could restore appellant's 1969 Camaro. At that time, appellant's Camaro was located at another restoration shop in Missouri. Appellant discovered appellee's business by performing a "Google" internet search, which lead appellant to appellee's website, www.shadygroverestorations.com.[1] After emailing back and forth, the parties entered into an agreement for appellee to retrieve appellant's Camaro from the other automotive shop in Missouri and begin restoration services in exchange for monetary payments from appellant. Eventually, the receipts sent by appellee to appellant for labor and materials went above the initial price estimation and the Camaro was only eighty percent restored. Communications broke down and this lawsuit ensued.

Appellant filed suit in Harris County, Texas on April 27, 2009, alleging six different causes of actions arising from the failed Camaro restoration.[2] Appellant asserted jurisdiction under the Texas long-arm statute. Tex. Civ. Prac. & Rem.Code Ann. §§ 17.041–.045 (Vernon 2008). Appellee filed a special appearance on June 2, 2009. On June 19, 2009, the trial court held a hearing on appellee's special appearance. After the hearing, the trial court signed an order sustaining appellee's special appearance and dismissing the suit.

During the special appearance hearing, appellant argued that appellee's affidavit contained misrepresentations. Specifically, appellant complained appellee's affida-

vit stated he was fifty-seven years of age when in fact he was only fifty-five; and that in his affidavit appellee exaggerated his level of automobile restoration experience. According to appellee's brief, these complaints were much to the chagrin of the trial court, resulting in the court threatening to sanction appellant if he could not support his allegations of misrepresentation. Apparently motivated by the trial court's comments, after the hearing appellee sent appellant a letter indicating he would file a motion for sanctions if appellant filed an appeal on the basis of the trial court's refusal to strike appellee's affidavit due to the alleged misrepresentations.

Appellant did in fact appeal the trial court's granting of the special appearance, claiming the trial court has personal jurisdiction over appellee and arguing appellee's alleged misrepresentations waived his special appearance and constituted a general appearance. Appellee filed a response brief, which incorporated a motion for sanctions on the basis that appellant's appeal was frivolous. *See* Tex.R.App. P. 45. Appellant filed a reply brief arguing appellee's motion for sanctions waived his special appearance. Appellee subsequently filed a supplemental motion for sanctions with this court, contending the motion for sanctions did not waive his special appearance.

DISCUSSION

### I. Waiver

 Appellant contends appellee waived his special appearance by making misrepresentations in his affidavit and by filing a motion for sanctions. A defendant

---

1. Appellee's website is no longer in existence.

2. The suit was originally filed in federal court in the Southern District of Texas; however, shortly after the federal suit was filed, appel-

lant recovered his Camaro from appellee and the amount in controversy fell below the required amount for diversity jurisdiction.

waives its right to contest the trial court's exercise of personal jurisdiction over it when the defendant: (1) invokes the judgment of the court on any question other than jurisdiction; (2) engages in acts that recognize an action is properly pending; or (3) seeks affirmative action from the court. *Moore v. Pulmosan Safety Equip. Corp.*, 278 S.W.3d 27, 32 (Tex.App.-Houston [14th Dist.] 2008, pet. denied). We review a trial court's finding with regard to waiver under a de novo standard of review. *Id.*

### A. Appellee's Affidavit

■ Appellant argues there are two misrepresentations in appellee's affidavit that waive appellee's special appearance. The first misrepresentation being that appellee stated he has been a resident of Missouri for fifty-seven years when he is in fact only fifty-five years old. The second misrepresentation is regarding appellee's level of experience restoring automobiles. In his affidavit, appellee states: "[u]ntil recently, I operated Shadygrove Restorations, located in Saint Charles County, Missouri. I generally worked [sic] restoring and repairing automobiles that were 10 years or older [sic]." Appellant argues this is in direct contrast to statements made to the St. Charles County Neighborhood Preservation Department, to whom appellee allegedly informed that he never operated a business of any capacity beyond appellant's 1969 Camaro restoration.[3] Appellant contends this court "should hold that false statements to the court of Texas in a 120a Special Appearance subject the nonresident defendant to the jurisdiction of the court...."

In *Exito Electronics Co. v. Trejo*, the Texas Supreme Court held that an appel-

late court erred in holding that a defective verification and affidavit resulted in a waiver of the nonresident's special appearance. *Exito Electronics Co. v. Trejo*, 142 S.W.3d 302, 308 (Tex.2004). In that case, the nonresident defendant filed a verified special appearance and attached a supporting affidavit. *Id.* at 304. The verification did not identify how the affiant had obtained personal knowledge of the facts stated in the special appearance. *Id.* The attached affidavit contained a jurat and a notary signature, but did not include a legible identification of the notary or a notary seal. *Id.* The court of appeals held the nonresident defendant waived his special appearance by failing to submit evidence supporting its special appearance in the trial court, as the verification and attached affidavit were fatally defective. *Exito Electronics Co. v. Trejo*, 99 S.W.3d 360, 373 (Tex.App.-Corpus Christi 2003), *rev'd*, 142 S.W.3d 302 (Tex.2004). The Texas Supreme Court disagreed and explained: "[a]ny defect in proof goes to the merits; it is simply not a waiver issue." *Id.* at 308. We hold this reasoning extends to the complained of misrepresentations in appellee's affidavit. Therefore, the alleged misrepresentations in appellee's affidavit go to the merits of the special appearance motion and do not serve to waive the special appearance. *See id.*

### B. Motion for Sanctions

■ Next, in his reply brief, appellant argues appellee waived his special appearance by filing a motion for sanctions with this court. In *Dawson–Austin v. Austin*, the Texas Supreme Court clarified what constitutes waiver of a special appearance. *Dawson–Austin v. Austin*, 968 S.W.2d 319 (Tex.1998). In doing so, the Court discussed *Portland Sav. & Loan Ass'n v.*

---

**3.** This statement is evidenced by an email appellee sent to the Director of Neighborhood Preservation in St. Charles County, Missouri, which was attached to appellant's Notice of Opposition to Defendant's Special Appearance.

*Bernstein,* where the Corpus Christi Court of Appeals held a motion for sanctions and a motion to disqualify counsel filed subsequent to the special appearance, but not filed "subject to" the special appearance, did not comply with Rule 120a and therefore constituted a general appearance. *Portland Sav. & Loan Ass'n v. Bernstein,* 716 S.W.2d 532, 534–35 (Tex.App.-Corpus Christi 1985, writ ref'd n.r.e.); *Dawson–Austin,* 968 S.W.2d at 323. In *Dawson–Austin,* the Texas Supreme Court overruled *Portland* to the extent *Portland* required filing a motion for sanctions "subject to" the special appearance. *Dawson–Austin,* 968 S.W.2d at 323. Accordingly, we hold the motion for sanctions in this case, which was filed subsequent to the special appearance, does not waive appellee's special appearance. *See id.;* Tex.R. Civ. P. 120a(1) (providing "[s]uch special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading, or motion; provided however, that a motion to transfer venue and any other plea, pleading or motion may be contained in the same instrument, or filed *subsequent* thereto without waiver of such special appearance . . . ." (emphasis added)).

Accordingly, we overrule appellant's issues regarding waiver.

## II. Personal Jurisdiction

Appellant argues the trial court erred in sustaining the Rule 120a special appearance motion filed by appellee. Appellant contends appellee had sufficient minimum contacts with the State of Texas so that assertion of personal jurisdiction over him would not offend traditional notions of fair play and substantial justice.

### A. Standard of Review

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the personal jurisdiction of a Texas Court. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). A defendant challenging the court's assertion of personal jurisdiction must negate all jurisdictional bases. *Id.*

Whether a court has personal jurisdiction over a defendant is a question of law, which we review de novo. *Id.* at 794. Frequently when deciding a special appearance, a trial court must resolve questions of fact before deciding the jurisdiction question. *Id.* When, as here, a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* at 795. A reviewing court must affirm if the judgment can be upheld on any legal theory supported by the evidence. *Minucci v. Sogevalor, S.A.,* 14 S.W.3d 790, 794 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

### B. Personal Jurisdiction

The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 17.041–.045 (Vernon 2008). That statute permits Texas courts to exercise jurisdiction over nonresident defendants doing business in the state of Texas. Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 2008). The broad language of section 17.042 extends Texas courts' personal jurisdiction as far as the federal constitutional requirements of due process will permit. *BMC Software,* 83 S.W.3d at 795. Because the long-arm statute's concept of "doing business" extends as far as federal due process will allow, any activity or contact which satisfies due process constitutes doing business, and any contact which does not satisfy due process does not constitute doing business, and we need not analyze

the "doing business" requirement separate from the due process requirement. *Vosko v. Chase Manhattan Bank, N.A.,* 909 S.W.2d 95, 98 (Tex.App.-Houston [14th Dist.] 1995, writ denied). To determine whether the assertion of personal jurisdiction is consistent with the requirements of due process, we rely on precedent from the United States Supreme Court and other federal courts, as well as Texas decisions. *BMC Software,* 83 S.W.3d at 795.

Personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The purpose of the minimum contacts analysis is to protect the defendant from being hailed into court when its relationship with Texas is too attenuated to support jurisdiction. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002). The minimum contact analysis requires that a defendant "purposefully avail" himself of the privileges of conducting activities within the state of Texas, thus invoking the benefits and protections of Texas law. *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Where the defendant has deliberately created continuing obligations between himself and residents of the forum state, he manifestly has availed himself of the privilege of conduction business there. *Burger King,* 471 U.S. at 475–76, 105 S.Ct. 2174.

A defendant is subject to personal jurisdiction based on his own purposeful activity and not on the unilateral acts of a third party. *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 785 (Tex.2005). Therefore, it is only the defendant's contacts with the forum that count when determining whether he has purposefully availed himself of the privilege of conducting business in the state of Texas. *Id.* In addition, the acts relied upon must be "purposeful" rather than fortuitous. *Id.* Also, a defendant must seek some benefit, advantage, or profit by "availing" himself of the jurisdiction. *Id.* It is the quality and the nature of the defendant's contacts, rather than the quantity, that is important to the minimum contact analysis. *Am. Type Culture,* 83 S.W.3d at 806. Random, isolated, or fortuitous contacts with the forum state are insufficient to confer jurisdiction. *Michiana,* 168 S.W.3d at 785.

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either general or specific jurisdiction. *BMC Software,* 83 S.W.3d at 795. General jurisdiction is present when the defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Id.* at 796. Specific jurisdiction is established if the cause of action arises from the defendant's contacts with the forum. *Id.* The nonresident defendant's purposeful conduct, not the unilateral acts of the plaintiff, must have caused the contact. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In the case at bar, appellant has conceded that appellee's contacts do not rise to the level required for general jurisdiction; thus, we will only look at appellee's contacts in regard to specific jurisdiction.

## C. Analysis

Appellee is a Missouri resident who, for a brief period of time, was running an automobile restoration shop located in

Missouri. Appellee does not have Texas residency, a registered agent in Texas, a Texas business, or any employees in Texas. Appellant argues Texas courts can assert personal jurisdiction over appellee because (1) appellee's website is more than passive, therefore making it a factor in the minimum contacts analysis; (2) appellee mailed bills, invoices, and a compact disk to an address in Texas; and (3) email communications between the parties. Appellee contends the circumstances in this case are nearly identical to those in *Michiana Easy Livin' Country, Inc. v. Holten. Michiana,* 168 S.W.3d at 777. In that case a Texas resident sought out services from an Indiana resident. *Id.* at 784. The Indiana resident never traveled to Texas, did not have employees in Texas, did not advertise in Texas and was not licensed to do business in Texas. *Id.* Additionally, the requested services were performed in Indiana and payments were made outside Texas. *Id.* Allegedly, the Indiana resident made a misrepresentation over the telephone to the Texas resident, which was the basis of the underlying suit. *Id.* The Texas Supreme Court held the Indiana resident did not have sufficient minimum contacts with Texas to warrant establishing personal jurisdiction over the Indiana resident in Texas. *Id.* at 794.

Although, *Michiana* is similar, it is not identical as appellee contends. In the instant case, appellee ran a website to market his services, which was accessible to all persons with internet access, including Texas residents. Thus, we must first address whether appellee's website provides us with a basis for jurisdiction.

### 1. Appellee's Website

 It is constitutionally permissible to exercise personal jurisdiction over one who conducts activity over the internet in a commercial nature and quality. *Experimental Aircraft Ass'n, Inc. v. Doctor,* 76 S.W.3d 496, 506 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997)). The nature and quality of these internet contacts are evaluated on a "sliding scale." *Id.* At one end of the spectrum, jurisdiction exists where one clearly does business over the internet by entering into contracts and through the repeated transmission of computer files. *Id.* At the other end, personal jurisdiction would not be appropriate where one passively posts information on the internet. *Id.* at 506–07. Courts evaluate the middle ground contacts based on the level of interactivity and the commercial nature of the exchange of information. Texas courts apply this "sliding scale" in determining whether internet activity permits personal jurisdiction. *Id.* at 507.

Appellee's website consisted of a home page explaining his services and a link to a gallery of photos. The gallery contained numerous examples of appellee's restoration projects. The home page contained appellee's telephone number and encouraged interested persons to contact him. According to appellant's affidavit, there was also a contact page, which provided appellee's email address and a contact form. In *Michel v. Rocket Engineering Corp.,* the Fort Worth Court of Appeals held the nonresident defendant's website was passive advertising where the nonresident defendant's website allowed potential customers to send information to the defendant and the defendant representative could then contact them with additional information. *Michel v. Rocket Eng'g Corp.,* 45 S.W.3d 658, 677–78 (Tex.App.-Fort Worth 2001, no pet.). The *Michel* court looked at the Fifth Circuit's decision in *Mink v. AAAA Dev. LLC.,* in which the court characterized a website as passive where the customer could send information to the host but there was no opportunity for response by the host computer. *Mink v. AAAA Dev. LLC.,* 190 F.3d 333,

336 (5th Cir.1999); *Michel,* 45 S.W.3d at 678. The Fifth Circuit stated "[w]hile the website provides users with a printable mail-in order form, AAAA's toll-free telephone number, a mailing address and an electronic mail ("e-mail") address, orders are not taken through AAAA's website." *Mink,* 190 F.3d at 337. Consequently, the Court concluded that the website could not be classified as anything more than passive advertising, which is a not ground for the exercise of personal jurisdiction. *Id.* (citing *Zippo,* 952 F.Supp. at 1124).

▆ In the instant case, the only interactive qualities are appellant's telephone number, email address, and a contact form. There is no evidence explaining the nature of the "contact form" or whether the host computer responds to contacts via this form. Without that evidence, we conclude appellee's website is a passive form of advertising. The presence of a contact form, email address, and phone number are insufficient to move the website beyond passive on the sliding scale of interactivity. *See Gessmann v. Stephens,* 51 S.W.3d 329, 339 (Tex.App.-Tyler 2001, no pet.) (finding website too passive to provide proper basis for personal jurisdiction where only interactive feature is link to email defendant). Consequently, we hold the website's level of interactivity does not rise to a level indicating appellee's purposeful availment of the Texas market so as to constitute an additional contact justifying specific jurisdiction. *See J.A. Riggs Tractor Co. v. Bentley,* 209 S.W.3d 322, 332 (Tex.App.-Texarkana 2006, no pet.) (holding because website was on the passive end of the spectrum, it did not constitute an additional contact within a specific jurisdiction analysis).

### 2. Mailings and Email Communications

▆ Appellant also contends that appellee's mailings and email communica-

tions provide sufficient contacts to establish personal jurisdiction. There is evidence the parties communicated primarily through email and established the agreement for restoration services by way of email communication. Additionally, there is evidence that appellee used the U.S. mail to send appellant a compact disk containing photos of past work and bills for labor and parts.

▆ The United States Supreme Court has held that purposeful availment is one of the main touchstones of due process. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws." Purposeful availment has at least three aspects. *Michiana,* 168 S.W.3d at 785. First, only the defendant's forum-state contacts matter, not anyone else's. *Id.* Second, the contacts must be purposeful, not merely random, isolated, or fortuitous. *Id.* Third, a nonresident defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction, thus impliedly consenting to its laws. *Id.* Both the United States Supreme Court and the Texas Supreme Court have found no purposeful availment in cases involving isolated sales solicited by consumers who proposed to use the product in a state where the defendant did no business. *Id.* at 786.

Appellant sought out the services of appellee presumably because appellant's Camaro was already located in Missouri. Appellant discovered appellee through his website, which, as explained above, was a passive website solely for advertising. In an email constituting the contract between the parties, appellee began the email: "as per your request". This indicates appel-

lant sought out appellee's business. Nowhere in the email was there any mention of appellant's Texas residency. The email indicates appellee set the terms of the agreement and only upon appellant's acceptance of those terms would appellee agree to restore appellant's Camaro. Appellee did not purposefully avail himself of the privileges of conducting business in this state. All of appellee's contacts with Texas were made at the request of appellant. Accordingly, we hold the trial court did not err in sustaining appellee's special appearance. Appellant's first issue is overruled.

### III. Sanctions

Appellee has asked this court to impose sanctions on appellant, contending this appeal is frivolous. *See* Tex.R.App. P. 45. Under rule 45 this court may award just damages to a prevailing party if it determines that an appeal is frivolous. *Id.; Clopton v. Pak*, 66 S.W.3d 513, 517 (Tex. App.-Fort Worth 2001, pet. denied). The question of whether to grant sanctions is a matter of discretion, which we exercise with prudence and caution, and only after careful deliberation. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 282 (Tex. App.-Houston [14th Dist.] 2000, no pet.). Although imposing sanctions is within our discretion, we will do so only in circumstances that are truly egregious. *Id.* Though we disagree with the merits of appellant's appeal, after considering the record and briefs, we do not believe the circumstances in this case warrant sanction. We therefore overrule appellee's request for Rule 45 sanctions.

### CONCLUSION

Having overruled all issues on appeal, we affirm the trial court's judgment.